## DUNCAN *v.* SHAW and others.

(*District Court, S. D. New York.* February 7, 1884.)

1. SHIPPING—SEAMAN'S WAGES—ADVANCE NOTE—DISCHARGE AFTER NEGOTIA-
   TION—INDORSEE—REV. ST. § 4534.

   Where an advance note is given upon the shipment of a seaman for a voyage, and it is transferred to a *bona fide* indorsee, under section 4534, the latter may recover of the owners of the vessel the amount thereof, notwithstanding the seaman's discharge by the master before sailing, and notwithstanding that the note contained the proviso that the seaman "be duly earning his wages." By giving the advance security, the master under the statute incurs the risk, as respects a *bona fide* indorsee, of the seaman's discharge before the vessel sails.

2. SAME—CASE STATED.

   Where the shipping commissioner, at the request of the master, gave such an advance security to the seaman shipped by him, with the consent of the master, the master having full opportunity previously for ascertaining the fitness of the seaman, and the master subsequently discharged the seaman by reason of drunkenness on the evening preceding the sailing of the ship, and the latter act not being sufficient ground of discharge by the maratine law, *held*, that the master was not entitled as against the indorsee of the security to allege the general unfitness of the seaman of which he had previously means of knowledge; that the security was valid, and could be enforced by the indorsee; and that the shipping commissioner being obliged to pay it, could, therefore, recover the amount in an action against the owners. *Held, also*, that the shipping commissioner, having defended in a former action against him on the note, without notice to the present defendants, was not entitled to recover against them the costs of the former suit.

In Admiralty.

*Benedict, Taft & Benedict,* for libelant.

*Alexander & Ash,* for respondents.

BROWN, J. This libel was brought to recover for moneys paid by the libelant upon an advance note of $60, dated December 26, 1877, and given for two months' advance wages to the cook of the ship S. Hignett. The libelant was then, and is now, United States shipping commissioner at this port. His deputy, at the request of the captain of the ship, procured a cook for the ship, who signed the shipping articles; and the deputy at the same time, as requested by the captain, signed the advance note in the following form:

"*Seaman's Advance Note.*

"NEW YORK, December 26, 1877.

"Three days after the final departure of the ship Sarah Hignett from New York, for Calcutta, I promise to pay Joseph Harley, or his order, sixty (60) dollars, provided he is then duly earning his wages.

"$60.            FRED C. DUNCAN, Dep'y U. S. Ship'g Com'r."

The cook had been employed upon the ship for two weeks previous, with the understanding on the part of the captain that he would be shipped for the voyage. On the morning of the day that the ship sailed, the captain, being dissatisfied through evidence of the cook's drunkenness, determined not to allow him to proceed on the voyage, called upon the shipping commissioner, discharged the cook, and pro-

cured another in his stead. The steward had previously indorsed and transferred the note to one Weinhold, acknowledged receipt of $60 thereon, and directed payment of the note to him or bearer. Weinhold, shortly after the vessel sailed, commenced suit upon this note against the commissioner and deputy commissioner in one of the city courts, and recovered judgment thereon, with costs. This judgment was paid by the libelant, who thereupon sues the owners of the ship, as for money paid at their request. Though the judgment was in form recovered against the deputy alone, as the deputy in fact acted on behalf of the shipping commissioner, and the latter has adopted his acts in that respect and paid the judgment, he is entitled to sue for reimbursement.

I have no doubt, upon the evidence, that the steward was, on the whole, an unfit person for the voyage. During the two weeks before the day of sailing, the master had, however, abundant opportunity to observe the steward's general unfitness. He knew that this steward was to be shipped by the shipping commissioner, and the latter acted at the master's request in procuring the shipping articles to be signed by the cook and in giving the advance note. The captain and owners became bound, therefore, by that engagement, and by the advance security given on account of it, in pursuance of sections 4532, 4534, Rev. St.; they could not allege previous unfitness as a defense against that obligation. By the section last named, it is provided that "if the seaman sails in the vessel from the port of departure mentioned in the security, and is then duly earning his wages, *or is previously discharged with consent of the master*, but not otherwise, the person discounting the security may, ten days after the departure of the vessel from the port of departure mentioned in the security, *sue for and recover the amount promised in the security*, with costs, either from the owner or any agent who has drawn or authorized the drawing of the security." By this section, it will be perceived, a recovery upon a note may be had not only if the seaman be duly earning his wages, but also in case he has been previously discharged with the consent of the master. The necessary effect of this provision is that a master who gives, or causes to be given, an advance security, for a seaman's wages, thereby incurs in favor of an indorsee all the risk of the seaman's discharge within a period of 10 days. It is not necessary to determine whether the liability would still exist where the discharge was for some gross misconduct on the seaman's part, such as, by the maritime law, would clearly be good ground for immediate discharge; since in this case the only act alleged after the seaman was shipped was a single drunken spree on the evening before the ship sailed, which alone is not a sufficient ground for such a discharge.

The note in this case contained the condition, "provided he [the seaman] is then duly earning his wages." As the seaman at that time was not earning his wages, had the right of recovery upon the note rested merely upon the ordinary rules of law, plainly no recovery

could have been had, because the condition was not complied with. But it is clear that upon such a note the right of recovery is not to be determined by ordinary legal rules; since the statute is explicit, that the person discounting the security may recover the amount promised by the security, with costs, if the seaman has been previously discharged with the consent of the master. The seaman in this case clearly was so discharged, without sufficient new cause arising after he was shipped; and the person who discounted the security had, therefore, a statutory right to recover the amount mentioned in it, not by force of the terms of the note, but by force of the statute. The libelant, when sued, did not give notice to the respondents. This, however, is immaterial, since the judgment itself is regarded as immaterial, here. Being liable to an indorsee, under the statute for the amount mentioned in the security, as an agent for the owners, who had authorized the drawing of the security, the libelant might have paid it without suit; and upon such payment he would have become entitled to reimbursement from the respondents as principals, without reference to any judgment.

The libelant is, therefore, entitled to recover the sum of $60, with interest, from the time of payment, together with costs in this court. Not having given notice of the suit in the city court to the respondents, he is not entitled to recover of the latter the costs in that court.